**AK STEEL CORPORATION,**
Appellant,

v.

**Carl E. CHILDERS; Hon J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2002–CA–002511–WC.

Court of Appeals of Kentucky.

June 24, 2005.

Christopher A. Dawson, Ashland, KY, for Appellant.

Robert G. Miller, Jr., Paintsville, KY, for Appellee.

Before JOHNSON and McANULTY, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

JOHNSON, Judge.

AK Steel Corporation has appealed from an opinion of the Workers' Compensation Board entered on November 6, 2002, affirming the Administrative Law Judge's award of permanent partial disability benefits to Carl E. Childers. Having concluded that the Board erred in affirming the ALJ's award of the 2 multiplier as found in KRS 342.730(1)(c)2 to enhance Childers's disability benefits, we reverse and remand.

Childers, who was born on September 6, 1940, has a high school diploma and has completed two years of college. He began his employment with AK Steel in 1963 and remained employed there until his retirement on June 27, 2001.[2] Childers testified that for the last 15 years of his employment with AK Steel, he worked as a maintenance clerk in an office handling personnel matters.

Childers began noticing problems with his hearing in 1993. He claimed that every workday for approximately one to two hours he was exposed to loud noise from the plant when he walked between the parking lot and his office, when he was on the plant floor searching for someone, and when the door to his office was opened. Childers's office was in the center of the plant and did not have sound-proof walls;

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. At the time of his retirement, Childers had worked for AK Steel for 39 years and 11 months.

however, there was no loud noise within the confines of his office.[3]

When Childers noticed a loss of hearing in 1993, he underwent a routine hearing test offered by AK Steel and was informed that he should follow up with his physician. That same year Childers saw Dr. Joseph B. Touma, who diagnosed his hearing loss as hereditary and fitted him with hearing aids. Childers testified that he was first informed that his hearing loss was work-related on January 24, 2002,[4] following a medical examination by Dr. Charles Hieronymus. Dr. Hieronymus noted in his records that Childers had a 16% permanent impairment rating under the AMA *Guides to the Evaluation of Permanent Impairment.* As a result of this information, on January 28, 2002, Childers filed his Application for Resolution of Hearing Loss Claim with the Department of Workers' Claims pursuant to KRS 342.7305.[5]

Pursuant to KRS 342.315, Childers was ordered to undergo an independent hearing loss evaluation by Dr. Ian Windmill, an audiologist at the University of Louisville. Dr. Windmill diagnosed Childers as suffering a bilateral hearing loss of a sensory type, due to work-related noise exposure.[6] Based upon the AMA *Guides,* Dr. Windmill assigned Childers an 18% permanent impairment rating to the body as a whole and recommended no limitations, but he recommended that Childers use hearing protection devices whenever exposed to loud noise and that Childers wear hearing aids.

At Childers's request, Dr. Touma also performed an independent medical examination on April 30, 2002. Dr. Touma diagnosed Childers with a sensorineural hearing loss, bilaterally, and assigned him an 8% permanent impairment under the AMA *Guides.* He recommended Childers be fitted for bilateral hearing aids and that he wear protection when exposed to noise, both industrial and nonindustrial. Dr. Alan J. Nissen, an otolaryngologist of Universal Surgical Associates, PSC, also examined Childers and his conclusions were similar to the conclusions of the other doctors.

Following a hearing on June 25, 2002, the ALJ relied upon the opinions of Dr. Windmill and Dr. Nissen and determined that Childers had an 18% permanent impairment rating under the AMA *Guides.* In calculating Childers's benefits, the ALJ applied KRS 342.730(1)(b) and the 2 multiplier contained in KRS 342.730(1)(c)2, despite finding that Childers had not returned to the type of work he was performing at the time of his injury. The ALJ stated in his opinion that "[Childers] has retired and has not returned to the work he was performing for [AK Steel] and pursuant to KRS 342.730(1)(c)2., his permanent partial disability benefits shall be two times the amount otherwise payable under subparagraph b of that subsection." Childers was awarded $143.12 per week for permanent partial disability benefits for 425 weeks.

AK Steel filed a petition for reconsideration, which the ALJ denied on September 3, 2002. AK Steel then appealed the ALJ's award of benefits to the Board,

---

**3.** Childers testified that for the last ten years of his employment he wore hearing protection when he went into regulated areas of the plant.

**4.** Approximately seven months after he had retired from AK Steel.

**5.** In his application, Childers stated that the hearing loss occurred by "listening to steam leaks, bells, sirens, hot steel popping, and unloading railroad cars with shakers around the clock."

**6.** Dr. Windmill stated "approximately 10% of Mr. Childers' hearing loss can be explained based on the natural aging process."

which affirmed on November 6, 2002.[7] This petition for review followed.[8]

It is well-established that the function of this Court in reviewing the Board "is to correct the Board only where the [ ] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."[9] Since AK Steel's appeal is not premised on any factual dispute, our review is limited to construing the applicable statute. "The interpretation to be given a statute is a matter of law, and we are not required to give deference to the decision of the Board" [citations omitted].[10]

AK Steel argues that because Childers retired and never returned to work at the same wage or a wage greater than his wage at the time of injury,[11] the ALJ erred by applying the 2 multiplier contained in KRS 342.730(1)(c)2. KRS 342.730(1)(c)2 provides as follows:

If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

AK Steel contends that "KRS 342.730(1)(c)2 is simply not triggered unless 'an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury[,]' " and only then is the employee entitled to the 2 multiplier. AK Steel argues that the term "that employment" in the second sentence of KRS 342.730(1)(c)2 refers to "that employment" as referenced in the first sentence of the subsection, i.e., employment to which the employee has returned at the same or greater wage.

A statute is subject to judicial construction only when it contains ambiguous language.[12] While a workers' compen-

7. The Board relied on this Court's unpublished decision in *Laurel Cookie Factory v. Forman*, 2002–CA–000608–WC, rendered on September 20, 2002, where this Court held that an injured employee was eligible to receive benefits based on the 2 multiplier, even though the employee did not return to work following her work-related injury. Our Supreme Court declined to follow this Court's interpretation of KRS 342.730(1)(c)2, and reversed *Laurel Cookie Factory* in an unpublished Opinion, which became final on January 22, 2004. Because it is unpublished, the Supreme Court's Opinion cannot be cited as legal authority and this Court is not bound by its holding. Kentucky Rules of Civil Procedure 76.28(4)(c). However, we agree with our Supreme Court's analysis and similarly resolve the issue in this case.

8. This appeal was placed in abeyance on January 8, 2003, pending the rendition of an Opinion in *Laurel Cookie Factory v. Forman*, 2002–SC–000867. On January 22, 2004, our Supreme Court's *Laurel Cookie Factory* unpublished Opinion became final. By order entered on February 26, 2004, this case was returned to the active docket.

9. *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685, 687–88 (1992).

10. *Wilson v. SKW Alloys, Inc.*, 893 S.W.2d 800, 801–02 (Ky.App.1995).

11. Childers did not return to any type of work at AK Steel because he retired on June 27, 2001, and, in fact, did not return to any type of employment whatsoever.

12. *Overnite Transportation Co. v. Gaddis*, 793 S.W.2d 129, 131 (Ky.App.1990).

sation statute is liberally construed to effectuate an beneficent purpose, a statute that is clear and unambiguous must be followed as written.[13] We conclude that the language in KRS 342.730(1)(c)2 is clear and unambiguous, and the statute requires a claimant to return to work to qualify for the 2 multiplier benefit. Hence, Childers's retirement from employment and his failure to return to work removed him from eligibility for the 2 multiplier.

■ When the General Assembly amended the workers' compensation statute in 2000, the method for awarding permanent partial disability benefits was amended to its current language, including the provision for a 2 multiplier enhancement. KRS 342.710(1) states that one of the primary purposes of Chapter 342 is to encourage an injured employee to return to work, preferably with the same employer and to the same or similar employment. The statute's provisions encourage an employer to return an injured employee to work at the same or greater wages, since an employee who cannot return to work because he is not physically able receives benefits enhanced by the 3 multiplier under KRS 342.730(1)(c)1. However, an injured employee who is physically able but fails to return to work is limited to the unenhanced benefit under KRS 342.730(1)(b).[14] Thus, the statute provides an incentive for an injured employee who is able to return to his previous employment and able to earn the same wage or a greater wage than he earned when injured to do so. Such an employee is assured a double benefit during any period that he is not employed for whatever reason, and thus, he is compensated at an enhanced rate for having attempted to perform his previous work even if the attempt later proved to be unsuccessful.

After reviewing the testimony and medical evidence, the ALJ determined that Childers retained the physical capacity to return to his previous work. However, due to his retirement Childers made no attempt to return to work at AK Steel, or to any other work in any capacity. Under those circumstances, the plain meaning of the statute only entitles Childers to receive the basic income benefit as provided in KRS 342.730(1)(b). Thus, application of the 2 multiplier was improper.

Accordingly, the opinion of the Board is reversed, and this matter is remanded to the ALJ for the entry of an award of income benefits which excludes the 2 multiplier contained in KRS 342.730(1)(c)2.

ALL CONCUR.

---

**13.** *Wilson,* 893 S.W.2d at 802.

**14.** *See generally Adkins v. Pike County Board of Education,* 141 S.W.3d 387 (Ky.App.2004).