KENTUCKY ASSOCIATED GENERAL CONTRACTORS SELF–INSURANCE FUND; Ladegast and Heffner Claims Service, Inc.; and Tri State Crane Rental, Inc., as Insured by Kentucky Associated General Contractors Self–Insurance Fund, Appellants

v.

TRI STATE CRANE RENTAL, INC.; Mark R. Foster; Hon. R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

Tri State Crane Rental, Inc., Cross–Appellant

v.

Kentucky Associated General Contractors Self–Insurance Fund, as Administered by Ladegast & Heffner; Tri State Crane Rental, Inc., as Insured by Kentucky Associated General Contractors Self–Insurance Fund; Hon. R. Scott Borders, Administrative Law Judge; and the Workers' Compensation Board, Cross–Appellees.

Nos. 2006–CA–002564–WC,
2007–CA–000004–WC.

Court of Appeals of Kentucky.

Sept. 7, 2007.

Douglas A. U'Sellis, Louisville, KY, for appellants/cross-appellees.

Todd D. Willard, Lexington, KY, for appellee/cross-appellant Tri State Crane Rental, Inc.

Before THOMPSON and VANMETER, Judges; PAISLEY,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Workers' compensation coverage is provided for injuries suffered outside of Kentucky if the contract of hire was made in Kentucky under the parameters of KRS 342.670. The primary issue we must re-solve in this case is whether the Administrative Law Judge (ALJ) and the Workers' Compensation Board correctly held that coverage existed for an Ohio resident employee who was injured in Ohio on the day he began work on the basis that such employment was a continuation of his previous employment with a Kentucky-based employer which had ended six months earlier. We hold that the ALJ and the Board correctly applied KRS 342.670 to this case, and we therefore affirm.

We recite the facts as summarized by the Workers' Compensation Board.

The facts relevant to disposition of this appeal are undisputed and may be briefly summarized. Mark R. Foster ("Foster") was injured on May 20, 2005 in the course and scope of his employment as a crane operator for Tri State.[2] He was working in Ohio at the time. He is a resident of Ohio. The date of injury in question was Foster's first day back at work for Tri State after a six-month period during which he had been laid off and, in the mean time, worked for another company.

Foster had first gone to work for Tri State on June 24, 2004. He worked through the Local 18, Operating Engineers, union hall, of which he has been a member for 30 years. Members' insurance and pension benefits are administered through the union, while their paychecks come directly from the hiring contractor, in this case Tri State.

Upon his original hiring in June, Foster presented himself to Tri State's office in Bellevue, Kentucky, where he completed the necessary pre-employ-

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. The proper name of the employer in this case is Tri State Crane Rental, Inc. We have therefore corrected the Board's references to "Tri–State."

ment paperwork and received his job assignment. He was not required to fill out an employment application, as he was hired by Tri State on the basis of his experience and previous business relationship with the owners of the company, Paul and Kathy Pitzer. Foster did, however, interview with Mr. Pitzer before being hired. Tri State contacted the union hall and requested Foster, specifically, for the job.

Foster worked for Tri State from June 24, 2004, to November 24, 2004 on various jobs located in Kentucky, Ohio and Indiana. His first job was at East Bend Power Plant in Kentucky, where he worked from June 24, 2004 through July 28, 2004. He then worked for Tri State in Cincinnati, from July 29, 2004 through August 2, 2004. His next assignment lasted just three days, August 3, 2004, through August 6, 2004, in Ghent, Kentucky. He was then sent to Oxford, Ohio, from August 19, 2004 through August 27, 2004, before returning to Cincinnati to work from September 3, 2004 through October 8, 2004. This five-week period of employment in Cincinnati was on various jobs in the area. Foster next worked in Florence, Kentucky, from October 9, 2004 through November 8, 2004, and then again in Bellevue, Kentucky from November 8, 2004 through November 24, 2004. Foster apparently worked one day for Tri State in Indiana, though the record does not disclose the exact date of that job.

Foster was laid off by Tri State as of November 25, 2004 when the company experienced the usual holiday slowdown in work. Tri State advised Foster to sign back up at the union hall for other work, if necessary, and further advised that he would be contacted as soon as work picked up again.

Immediately after his layoff from Tri State, Foster took a job with Sofco Erectors ("Sofco"), for whom he worked from November 25, 2004 through April 15, 2005. He was contacted on or around November 25, 2004 by Tri State and offered another assignment, but it was to last only a few days. Foster elected to take the job with Sofco, which was supposed to be a six-month assignment.

Foster was without work from April 15, 2005 when the Sofco job wrapped up, until May 20, 2005 when he was contacted again by Tri State. Although the job to which Foster was sent on May 20, 2005 was only a one-day assignment, it was understood that Foster was being "recalled" by Tri State to work on a regular basis. Ms. Pitzer testified that it was usual for work to pick back up in the spring and it was anticipated there would be sufficient work to keep Foster employed for a while.

Tri State was not required to contact the union hall in order to bring Foster back to work. The evidence is somewhat conflicting as to the union's recall policy, however. According to Foster, if a union member works for a contractor for at least six months, then the contractor has the right to call the member back directly, without going through the union, for up to two years. The member is not required to go back to work for the contractor, however. It is a discretionary matter for both the contractor and union member. Ms. Pitzer testified that it is her understanding that the contractor may contact the member directly, without going through the union, if the member has worked for the contractor within the last year. In any case, it is undisputed that Tri State recalled Foster directly on May 20, 2005.

Foster reported to work that day at Tri State's equipment holding yard on Spring Grove Avenue in Cincinnati,

Ohio. He met Mr. Pitzer and the two of them traveled together to job sites in Wilmington and then South Lebanon, Ohio. It was upon returning to the yard in Cincinnati that Foster sustained the crush injury to his right thumb that is the subject of the claim *sub judice.*

Foster's claim for workers' compensation benefits was submitted to [Kentucky Associated General Contractors Self–Insurance Fund (KAGC)] through the fund's third-party administrator, Ladegast & Heffner ("L & H"). Mary Margaret Sutherland ("Sutherland"), the Vice–President of Claims Services for L & H, testified that Foster's claim was denied due to lack of coverage for the out-of-state injury. It is undisputed that Tri State had a policy of coverage in effect through KAGC on the date of injury in question for claims arising in the state of Kentucky. Moreover, the policy also provided for coverage in "such other states, *except* Illinois, where the insured employs regularly employed Kentucky employees." Sutherland testified that "regularly employed Kentucky employees" is very liberally defined to include *anyone who has worked in Kentucky at least eight hours before sustaining an injury.*

Sutherland further testified that, notwithstanding KAGC's out-of-state policy, it would not be interpreted to conflict with KRS 342.670. In other words, if the statute would provide extraterritorial coverage for a given injury, then the claim would be accepted. In Foster's case, Sutherland explained, it was determined that KRS 342.670 did not apply to extend coverage. This determination was premised on the assumption that Foster's employment with Tri State was not continuous between 2004 and 2005. That is, L & H deemed his employment on May 20, 2005 to be pursuant to a new contract of hire, consummated over the

telephone when Foster accepted the job in Ohio from his residence there. Sutherland elaborated, "Because Mr. Foster is out of a union hall, and those periods of employment are on, off, on, off as they're either short periods of time, long periods of time, but when they end, they end, and then they may begin again, they may not. So we look at that as each time a new employment."

When KAGC, through L & H, denied coverage for Foster's claim, Tri State filed a Form 101, application for resolution of injury claim, on September 13, 2005, requesting that the issue of coverage be resolved by an administrative law judge. The matter was subsequently assigned to ALJ Borders, who bifurcated the claim for the taking of proof on the question of coverage, which included the depositions of Foster, Ms. Pitzer and Sutherland. The parties waived a final hearing and agreed to submission of the matter following briefing on the sole question of coverage. Although not expressly preserved as an issue, Tri State nonetheless argued in its brief before the ALJ that the cost of the proceedings should be assessed against L & H, as the third-party administrator for KAGC, based on its denial of coverage without reasonable grounds, which had forced Tri State to file a Form 101 and litigate the issue.

In his opinion rendered June 9, 2006, the ALJ determined that, on the date of injury in question, Foster was working under a contract of hire made in Kentucky and his employment was not principally localized in any state. Thus, pursuant to KRS 342.670(1)(b), Kentucky has extraterritorial jurisdiction over Foster's claim, for which KAGC's policy of workers' compensation would extend to cover Tri State's liability.

On appeal, the Board upheld the ALJ's application of KRS 342.670 to the facts, but reversed the ALJ's determination that KAGC, through L & H, had improperly denied the claim. Both parties appeal.

■ Our standard of review of Workers' Compensation Board decisions is well known in that our function "is to correct the Board only where the [ ] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *AK Steel Corp. v. Childers,* 167 S.W.3d 672, 675 (Ky.App.2005). This case involves the interpretation of KRS 342.670, and its application to facts regarding Foster's employment. Specifically, the issue in this case is whether Foster's employment which began in May 2004 was one, continuous contract of employment, albeit interrupted by a six month lay off, or whether his hire in May 2005 constituted a new contract of employment. In this case, the facts are undisputed but the question of whether the employment falls within the parameters of the statute is a conclusion of law, as to which we are not required to defer to either the ALJ or the Board. *AK Steel,* 167 S.W.3d at 675 (holding that "[t]he interpretation to be given a statute is a matter of law, and we are not required to give deference to the decision of the Board"); *see also Jecker v. Plumbers' Local 107,* 2 S.W.3d 107, 110 (Ky.App.1999) (whether someone was an employee within meaning of KRS 342.640 was a legal conclusion).

KRS 342.670(1) provides:

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he ... would have been entitled to the benefits provided by this chapter had that injury occurred within this state, that employee ... shall be entitled to the benefits pro-vided by this chapter, if at the time of the injury:

(a) His employment is principally localized in this state, or

(b) He is working under a contract of hire made in this state in employment not principally localized in any state, or

(c) He is working under a contract of hire made in this state in employment principally localized in another state whose workers' compensation law is not applicable to his employer, or

(d) He is working under a contract of hire made in this state for employment outside the United States and Canada.

■ Both the ALJ and the Board analyzed the facts under subsection (b), concluding that Foster's employment was not principally localized in any state, since Tri State's business occurs in Indiana, Kentucky and Ohio, but that Foster was "working under a contract of hire made in this state" since Foster had come to Tri State's office in Bellevue, Kentucky in May 2004 to complete paperwork with respect to his initial hire. KAGC argues, on the other hand, that Foster's original contract of hire ended in November 2004, when he ceased working for Tri State and began working for Sofco, and further that a new contract of hire was made in Ohio when Tri State called Foster at his Ohio residence in May 2005. We disagree with KAGC's argument and adopt the Board's analysis as our own:

Our review of Kentucky jurisprudence reveals no precedent governing our disposition of this question. Likewise, we find no guidance in the statute or the legislative history surrounding Kentucky's extraterritorial coverage provisions.

In this matter of first impression, we look initially to Professor Larson's authoritative treatise, *Workers' Compensa-*

*tion Law,* where we find the following discussion and analysis:

### § 143.04 Place of Employment Relation

**[1]—Employment Relation as Best Test**

Of the three original theories on extraterritoriality—tort, contract, and employment relation—the last is the most relevant to compensation theory and the least artificial. In this view, the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.

**[2]—Determining Situs of Employment Relation**

**[a]—Introduction**

The big question under this theory is: What is meant by existence or localization of the relation within the state? The location of an injury is easy to identify; the location of a contract less so, but still subject to well-known legal rules; but the whereabouts of a relation between two people has a somewhat more mystic quality.

**[b]—Making of Contract Within State as Creating Employment Relation in State**

The making of the contract within the state is usually deemed to create the relation within the state. *The relation, having thus achieved a situs, retains that situs until something happens that shows clearly a transference of the relation to another state. This transfer is usually held to occur when either a new contract is made in the foreign state, or the employee acquires in the foreign state a fixed and nontemporary employment situs.* The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed.

**[c]—Location of Transitory or Traveling Employments** In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but *a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states. Generally, an employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as the employee's presence in any state, even including the original state, is by the nature of the employment brief and transitory.*

**[3]—Continuous Versus Successive Jobs** Questions sometimes arise, particularly in the construction business, involving the difference between successive jobs, each having its own individual existence outside that state, and a continuous employment relation in the course of which extensive separate jobs are done in foreign states, sometimes lasting many months each. *If the employment is intended to be continuous, the local relation will probably be held to continue;* this conclusion may be reenforced by the local presence of other factors such as the employee's residence or the employer's principal business or head-

quarters, indicating that as each job is completed the employee may be expected to return to the local state, and that the out-of-state activities are but an adjunct to the employer's main business located within the state.

(Citations omitted.)(Emphasis added.)

We believe Professor Larson's analysis to be sound and consistent with the basic principle underlying the extraterritorial coverage provisions of KRS 342.670 and of Kentucky's Workers' Compensation Act, generally. That is, the statute is to be construed liberally to effectuate "the munificent, beneficent and remedial purposes of the Workers' Compensation Act." *Coal–Mac, Inc. v. Blankenship*, 863 S.W.2d 333, 335 (Ky. App.1993). *See also Beale v. Shepherd*, 809 S.W.2d 845, 849 (Ky.1991)("protecting the interests of the injured worker is a basic tenet of workers' compensation law").

Thus, under the facts of the case *sub judice*, involving a contract of hire made in one state followed by successive, temporary jobs in one or more other states, we believe the primary question to be answered is whether the employment was intended to be continuous. This is a question of fact to be answered by the ALJ with reference to those factors cited by Professor Larson, as well as other relevant factors that may arise in a particular case. If the ALJ determines that the employment was intended to be continuous and that determination is supported by substantial evidence, then the situs of the original contract of hire and the state in which the employment is principally localized at the time of injury are controlling for purposes of KRS 342.670.

Applying the foregoing test to the case *sub judice*, we conclude there is substantial evidence of record to support the ALJ's finding that Foster's employment with Tri State was continuous. The evidence on this issue was conflicting. The ALJ could have accepted KAGC's argument that the intervening six-month period, during which Foster worked for an Ohio employer in the state of Ohio for five months, was sufficient to break the relation between Foster and the state of Kentucky. However, we are not prepared to say that the evidence compelled such a conclusion.

The evidence established that the job with Sofco was temporary. More importantly, both Foster and Ms. Pitzer testified to their mutual understanding that Foster would be recalled by Tri State as soon as work picked back up. Both described Foster's status over the winter months as a temporary "lay off." Foster advised Ms. Pitzer that he was going to take the six-month assignment with Sofco and that he would get in touch with her upon completion of that assignment to ascertain whether more work was available with Tri State. Foster did, in fact, contact Tri State on subsequent occasions to ascertain the availability of additional work. When additional work became available, the parties picked up just where they had left off. Under these facts, we do not believe Foster's acceptance of the job assignment on May 20, 2005 constituted a new contract of hire.

Our conclusion finds support in the following discussion found in *Corpus Juris Secundum* under the heading "Circumstances not creating new contract":

Where temporary layoffs are common in an industry, and laid off employees are not considered to have been dismissed, and parties behave as though there had been no significant break in service when a claimant

returns to work after a layoff, the employee returns under the existing employment contract. When an employee returns to work after having been temporarily laid off as a disciplinary measure, the contract of employment temporarily suspended is continued, and no new contract arises. A new contract does not arise when there is a change in the work done, or in the compensation paid to an employee. Whether payment is by the day, week, or month, each day's employment does not amount to a separate contract of hire. 99 C.J.S. *Workers' Compensation* § 139.

In light of the foregoing, we believe the ALJ's determination that Foster's work at the time of his injury on May 20, 2005 was a continuation of his earlier period of employment beginning June 24, 2004 is based on substantial evidence and a sound application of the law. As to this issue, we affirm.

■ The only remaining issue is the cross-appeal filed by Tri State concerning the Board's reversal of the ALJ's award of attorney fees and costs to Tri State for the denial of the claim by KAGC, through its third party claims administrator, L & H. Without unduly lengthening this opinion, we agree with the Board's determination that L & H's denial of the claim was based on reasonable grounds, and that therefore the ALJ's assessment of attorney fees and costs under KRS 342.310 was clearly erroneous based on the evidence of record.

The Opinion and Order of the Workers' Compensation Board is affirmed in all respects.

ALL CONCUR.