RENDERED:  SEPTEMBER 11, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001768-WC

PC METRO BOTTLING (PEPSICO)                                    APPELLANT

v.          PETITION FOR REVIEW OF A DECISION
            OF THE WORKERS' COMPENSATION BOARD
                  ACTION NO. WC-16-77912

LONNIE FELTNER; HONORABLE
ROLAND CASE, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  PC Metro Bottling (Pepsico) requests review of the

November 1, 2019, opinion of the Workers' Compensation Board (the Board)

affirming the opinion, award, and order of the administrative law judge (ALJ),

entered May 23, 2019.  For the following reasons, we affirm.

## BACKGROUND

In 2016, Lonnie Feltner worked as a bay driver for Pepsico, in Hazard, Kentucky. During his shift on June 8, 2016, Feltner felt a sharp pain in his left shoulder while performing his job duties. On November 17, 2016, Feltner had surgery on his shoulder and was off work until April 16, 2017, at which time he returned to his pre-injury position as a bay driver with Pepsico. Feltner remained as a bay driver with Pepsico until December 4, 2017, when Pepsico moved its operations from Hazard to Pikeville, Kentucky. Upon Pepsico's move to Pikeville, Feltner applied for and received a new position as an account manager with Pepsico. He testified he would have kept his job as a bay driver if it had been available.

In November 2018, Feltner initiated the underlying workers' compensation claim. The benefit review conference (BRC) was held on March 12, 2019. Soon thereafter, on March 27, 2019, the formal hearing occurred. The issues presented at the hearing were (1) benefits per Kentucky Revised Statute (KRS) 342.730, (2) Feltner's physical capacity to return to the type of work he performed at the time of injury, and (3) his post-injury average weekly wage (AWW).

The ALJ issued his opinion, award, and order on May 23, 2019, wherein he made the following findings:

The parties stipulated to a pre-injury [AWW] of $1,194.61 with [Feltner's] post-injury wages reflecting an average weekly wage of $1,237.69 as indicated in [Pepsico's] filing of post injury wage records.

. . .

In this case the ALJ finds [the doctors] correctly indicated [Feltner] would have 8% impairment which carries a multiplication factor of 0.85 for a 6.8% permanent partial disability under KRS 342.730(1)(b).

. . .

In this particular case, [Feltner] returned to his preinjury work at equal or greater wages following left shoulder surgery and continued to work in that position from April 16, 2017 through December [4],[1] 2017 at which time the location [Feltner] was working in was closed and relocated. [Feltner] took a different position with [Pepsico] at that time.

. . .

The ALJ is persuaded [Feltner] returned to work at equal or greater wages, but since December [4], 2017 is not earning equal or greater wages.

As a result of the above, the ALJ held that Feltner was entitled to permanent partial

disability (PPD) benefits. Additionally, the ALJ determined Feltner was entitled to

---

[1] In the ALJ's original opinion, award, and order, the ALJ found that Feltner had worked as a bay driver through December 3, 2017, and he had not been earning equal or greater post-injury wages since that date. However, soon after the opinion was issued, Pepsico filed a petition for reconsideration wherein it requested, among other things, that the ALJ correct the December 3, 2017, date to December 4, 2017. This portion of the petition for reconsideration was granted, and the December 4th date is reflected throughout this opinion.

have those benefits enhanced by the two multiplier under KRS 342.730(1)(c)2. from December 4, 2017 "until such time as [Feltner] returns to earning equal or greater wages[.]"

After the issuance of the opinion, award, and order, both parties filed petitions for reconsideration with the ALJ. Both petitions were overruled, with a minor exception.[2] Subsequently, Pepsico appealed the ALJ's decision to the Board arguing he had improperly applied the two multiplier to Feltner's PPD benefits. On November 1, 2019, the Board entered an opinion affirming the ALJ's opinion, award, and order. Pepsico's petition for review followed.

## STANDARD OF REVIEW

It is well-established that we "correct the Board only where [the] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 688.

In the case *sub judice*, the only issue raised by Pepsico is one of statutory construction; therefore, our review is *de novo*. *Cumberland Valley*

---

[2] See Footnote 1, *supra*.

*Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). For matters of statutory interpretation Kentucky has long mandated liberal construction. KRS 446.080(1). When considering workers' compensation cases, the Kentucky Supreme Court has stated:

> The mandate of KRS 446.080 is particularly applicable to the Workers' Compensation Act which is often cited as an act to be liberally construed to effect its remedial purpose. All presumptions will be indulged in favor of those for whose protection the enactment was made.
>
> > In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.

*Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 256 (Ky. 2015) (citations and internal quotation marks omitted).

### ANALYSIS

Pepsico asserts the ALJ incorrectly applied the two multiplier in KRS 342.730(1)(c)2. to Feltner's PPD award. The statute provides:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability

-5-

shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

KRS 342.730(1)(c)2. In other words, an employee is entitled to double PPD benefits if (1) his post-injury AWW is greater than or equal to his pre-injury AWW and (2) "that employment" ceases. *Id.*

In the case *sub judice* the first element is undisputed. Instead, Pepsico has essentially asked this court to determine whether an employee's employment may "cease" within the meaning of KRS 342.730(1)(c)2. if an employee remains in a continual employment relationship with the employer. We believe it can.

To fully address the issue presented, we must first define "that employment" as used in the statute. Pepsico posits that "'[e]mployment' refers to a relationship between an employee and his employer, not to the employee's job classification or specific duties within his employment." However, Pepsico's suggested definition overlooks the Kentucky Supreme Court's holding in *Toy v. Coca Cola Enterprises*. In *Toy*, the Court concluded

the words "that employment" and the phrase "[d]uring any period of cessation of that employment" refer to the cessation of employment at which the individual earns an

-6-

average weekly wage equal to or greater than the average weekly wage at the time of injury rather than to a particular employment.

274 S.W.3d 433, 435 (Ky. 2008). The Board's interpretation of "that employment" is consistent with the Court's. Thus, we decline to adopt the definition proposed by Pepsico.

Next, we turn to whether "that employment" may "cease" under KRS 342.730(1)(c)2. if an employee maintains a continuous employment relationship with his employer. Here Pepsico asserts there must be an "actual cessation of employment," *i.e.*, the employment relationship must become nonexistent before the statute is triggered. However, this requirement assumes we adopt Pepsico's definition of "that employment" and does not find support in the statute or case law.

As discussed above, KRS 342.730(1)(c)2. has two requirements before an employee may qualify for the double benefit. In the case *sub judice* the only question was whether the post-injury employment at which Feltner earned an equal or greater AWW than his pre-injury AWW ceased. Based on the facts provided, it did. Before his injury, Feltner worked as a bay driver with Pepsico. The parties stipulated to a pre-injury AWW of $1,194.61. After his injury, Feltner returned to his position as a bay driver with Pepsico. Based on Pepsico's post-injury wage records, the ALJ determined Feltner's post-injury AWW was

$1,237.69 which is greater than his pre-injury AWW. It is undisputed that upon the closure of Pepsico's Hazard plant Feltner's position as a bay driver was no longer available. As a result, Feltner applied for and received an account manager position with Pepsico's Pikeville plant. Further, it is undisputed that Feltner's AWW as an account manager has not been equal to or greater than his pre-injury AWW.[3] Therefore, based on the Court's definition of "that employment" in *Toy*, Feltner's employment ceased.

Finally, Pepsico argues the Board's opinion is a violation of public policy because it discourages employers from rehiring injured workers. We disagree. The purpose of KRS 342.730(1)(c)2. is to encourage an injured employee to return to work. *AK Steel Corp. v. Childers*, 167 S.W.3d 672, 676 (Ky. App. 2005). It also encourages employers to "return an injured employee to work at the same or greater wages[.]" *Id*. Thus,

> the statute provides an incentive for an injured employee who is able to return to his previous employment and able to earn the same wage or a greater wage than he earned when injured to do so. Such an employee is assured a double benefit during any period that he is not employed for whatever reason, and thus, he is compensated at an enhanced rate for having attempted to perform his previous work even if the attempt later proved to be unsuccessful.

---

[3] Pepsico also asserts that Feltner is not qualified to receive double benefits under KRS 342.730(1)(c)2. because his wages fluctuated before and after his injury. This argument is without merit because, as discussed above, Feltner's wages have not returned to an equal or greater amount than stipulated.

*Id.*

If we were to adopt Pepsico's interpretation of the statute, employers could circumvent the purpose thereof by eliminating the employee's position and moving them to a lower paying one. The statute is clear: if the employment at which the employee earns an equal-to or greater pre-injury AWW ceases, for any reason, the employee is entitled to the double benefit. KRS 342.730(1)(c)2. If at some point Feltner's AWW becomes equal to or greater than his pre-injury AWW, Pepsico is free to file a motion requesting the ALJ to adjust Feltner's benefits accordingly. KRS 342.730(1)(c)4.

## CONCLUSION

For the foregoing reasons, we affirm the November 1, 2019, opinion of the Workers' Compensation Board.

ALL CONCUR.

BRIEF FOR APPELLANT:

Cate A. Poole
Lexington, Kentucky

BRIEF FOR APPELLEE LONNIE FELTNER:

Ronnie M. Slone
Prestonsburg, Kentucky